[Gadsden Fertilizer Co. v. Wiles, et al.]

# Gadsden Fertilizer Co. *v.* Wiles, *et al.*

### Assumpsit.

(Decided June 13, 1912.   59 South. 582.)

*Agriculture; Fertilizer; Request to Register; Sufficiency.*— Under section 24, Code 1907, a request to register certain brands of fertilizer was not sufficient where the person purporting to make it was neither a corporation nor a partnership entity, but merely a branch of a corporation with a different name and address, and its business was transacted by an officer or employee of such a corporation. Such request was also insufficient where it failed to state the name of the brand of the fertilizer, and the sources from which the phosphoric acid, nitrogen and potash were derived, although it stated their proportions.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Assumpsit by the Gadsden Fertilizer Company against W. S. Wiles and others. Judgment for defendants, and plaintiff appeals. Affirmed.

The paper referred to in the opinion as a request to register is as follows: "To J. A. Wilkinson, Comm'r Agriculture & Industries of the State of Alabama, Montgomery, Ala.—Dear Sir: You are hereby requested to register for sale and distribution in the state of Alabama, the below named brands of fertilizer manufactured by the firm of Gadsden Fertilizer Co., at Gadsden, Ala.: Gadsden H. G. Blood-Meal and Potash, water soluble phosphoric acid 8; citric soluble phosphoric acid 2; total available phosphoric acids 10; nitrogen 1.65; potash 4. Gadsden H. G. Meal Mixture, same as H. G. Blood-Meal and Potash, except potash is given at 2; Gadsden H. G. Blood and Bone Guano, same as H. G. Meal Mixture; Gadsden H. G. Acid and Potash, same as H. G. Blood-Meal and Potash, except no nitrogen is given; Gadsden H. G. Acide Phosphate,

water soluble phosphoric acid 12.50, citric soluble phos-
phoric acid 2.50; total available phosphoric acids 16;
no nitrogen and no potash given. Gadsden H. G. Acid
Phosphate, water soluble phosphoric acid 11; citric
soluble phosphoric acid 3; total available phosphoric
acid 14; no potash and no nitrogen. Gadsden H. G.
Ammoniated Guano, total available phosphoric acid
9; nitrogen 1.65; potash 3; Gadsden Extra H. G. Guano,
total available phosphoric acid 10; nitrogen 3.30; pot-
ash 4." In no instance is the source of phosphoric acid
or nitrogen given, nor is the number of pounds in each
sack given. The above is arranged in tabular form,
with the name of the brands and the other requirements
set out as a heading, with the brands of the different
numbers constituting the ingredients set out in its ap-
propriate place.

JOHN A. LUSK & SON, for appellant. The appellant
could be an agent of another company and also the
manipulator or jobber of the fertilizer sold by it.—Sec.
24, Code 1907. The certificate was not open to the ob-
jection as to the percentage shown therein.—Sec. 38,
Code 1907. The sources of phosphoric, etc., are suffi-
ciently set forth in the request to register.—Sec. 24,
Code 1907.

STREET & ISBELL, for appellee. The request to regis-
ter was insufficient because not filed by the corporation
or partnership entity manufacturing the fertilizer, and
was also insufficient because it failed to give the sources
from which nitrogen, potash and phosphoric acid was
derived.—Secs. 24 and 38, Code 1907.

SIMPSON, J.—This is an action by the appellant
(stated in the caption of the complaint to be a corpora-

tion) against the appellees on a promissory note. The pleas were, first, non est factum; second, that the note sued on was for commercial fertilizer, and one or more of the bags had no "tag" attached thereto, in accordance with the statute; third, failure of plaintiff, a manufacturer of fertilizer, to file with the commissioner of agriculture and industries "the name of said brand of fertilizer, with the name and address of the manufacturer, also the guaranteed analysis thereof, stating the sources from which the phosphoric acid, nitrogen, and potash contained therein are derived"; fourth, failure to attach to or brand on several bags "the brand name of the fertilizer, the weight of the package, the name and address of the manufacturer, the guaranteed analysis of the fertilizer, giving the weight of each package in pounds, the brand name or trade-mark, the guaranteed analysis, per cent. available phosphoric acid, per cent. of nitrogen, per cent. of potash, name and address of the manufacturer, total number of pounds of available plant food"; fifth, that at the time of the sale the plaintiff was not licensed, as required by law, to sell commercial fertilizers; sixth, the note is without consideration; seventh, payment; eighth, that the fertilizer for which the note was given contained less than 14 per cent. of available phosphoric acid, nitrogen, and potash combined and available as plant food. The plaintiff offered in evidence the request for registration, set out in the statement of this case by the reporter.

Defendants objected to the introduction of said paper, because it "did not show or state the real name of the real manufacturer, and the real manufacturer of the articles mentioned was in fact the Planters' Chemical & Oil Company, of Talladega, Ala., and this statement sets out as the real manufacturer the Gadsden Fertili-

zer Company, when in fact there was no such company; and because the statute required it to state the source from which it derived its phosphoric acid, nitrogen, and potash, and this certificate does not do so"; also because it showed "that the fertilizer contained less than 14 per cent. of plant food, viz., phosphoric acid, nitrogen, and potash." The evidence showed that in fact there was no corporation or partnership organized as the Gadsden Fertilizer Company, but that there was a corporation known as the Planters' Chemical & Oil Company, with its principal place of business at Talladega, Ala.; that the Gadsden Fertilizer Company was merely a branch of it, and that the business of said Planters' Chemical & Oil Company at Gadsden was transacted by an officer or employee of the Talladega corporation, in the name of the Gadsden Fertilizer Company; that the goods for which the note was given were known as "the Gadsden High Grade Fertilizer," which was actually mixed at Gadsden by said Gadsden Fertilizer Company, but sometimes goods were shipped from the Talladega plant, to fill the Gadsden Fertilizer plant orders.

The court sustained the motion to exclude said paper, holding that it, in connection with the evidence, was insufficient to authorize the plaintiff to recover, and the note was void. Thereupon the plaintiff took a nonsuit, with bill of exceptions.

It will be noticed that the certificate offered in evidence fails to state, as required by section 24 of the Code, "the name of the brand"; also that it fails to state correctly the name and address of the manufacturer; also that it fails to state "the sources from which the phosphoric acid, nitrogen, and potash are derived." Appellant claims that "the Gadsden Fertilizer Company" really was the manipulator of the fertilizer, and

as the statute requires the statement of the "manufac-
turer or manipulator," the certificate is sufficient. It
is not perfectly clear in what sense the word "manipu-
lator" is used in this section, but it seems to have been
inserted out of abundant caution, lest it should be held
that one who purchased the ingredients separately and
then combined or mixed them into a common mass, call-
ing it "fertilizer," was not a manufacturer, but merely
a manipulator of articles already manufactured. How-
ever that may be, according to the evidence the Gadsden
Fertilizer Company was not a separate entity, but
merely a name under which the Planters' Chemical &
Oil Company acted; consequently whatever was done
under that name was done by the said Planters' Chemi-
cal & Oil Company, and its name should have been given
as the manufacturer or manipulator. In addition, as
shown above, the certificate was defective in other par-
ticulars and the court properly excluded it.

The judgment of the court is affirmed.

Affirmed. All the Justices concur.